Test. Thank you very much, Your Honor. The court, please, and the department for appearing on behalf of Mr. Marshall Potter. Mr. Potter appeals a decision of the Veterans Court dealing with an application for compensation under the Equal Access to Justice Act. In the decision that is on appeal, the court reached a request for substantial justification, and we believe that in doing so, the court erred in its consideration of the scope of the totality of circumstances. There is no question that the totality of circumstances is the correct test. The question in this case is what is the scope, or what are the circumstances, and when do those circumstances begin for the appropriate consideration of whether or not the government has come forward with sufficient evidence to demonstrate substantial justification. In this case, the court will only rely upon an assertion that involved a case involving the question of the board jurisdiction called Skates, which was decided both by the Veterans Court and by this court. But both of those decisions took place after the October 1999 board decision, which was the subject matter of Mr. Potter's appeal. In that case, the board, as it had in Skates, unlawfully exercised jurisdiction. The question then becomes whether or not the VA can assert as a defense to their liability under the Equal Access to Justice Act. Can I just? Yes. So your argument is the totality of circumstances does not include Skates. I mean, is that the offense, the offending act with the board's consideration? That's part of the offending. They also considered the broader reference to what I think was called the complexity of the statutory scheme and the unclear state of the law. But I believe that those two propositions were based upon the holding in Skates. The holding in Skates clarified or interpreted 5904. But isn't it true, and wouldn't you say there's nothing wrong with the courts having looked at what the state of the law was at the time the decision was made? That's what they're supposed to do. That's correct. In 1999. Right. And their reference to Skates was just to describe what the state of the law was before Skates. And we've already agreed as to what the state of the law was at the relevant time period. But that was that 5904 had a limited grant of jurisdiction to the board and that the board could exercise jurisdiction to review fee agreements only under the limited circumstance of a review for excessiveness or unreasonableness. But when the veterans court interpreted that portion of 5904 that related to the board's jurisdiction, it didn't change the law. It didn't make a new statute. It simply interpreted the law as it always was. Skates not? Skates. That's correct. So is the dispute here that you have with the court that you disagree that the law was ambiguous before Skates? No, I'm suggesting that to use the ambiguity of the statutory scheme generally is not an appropriate consideration under the rubric of totality of circumstances because all that was at issue in Skates was the question of the board's jurisdiction. It didn't have to do with the broader question of the complexity of the statutory scheme. It didn't have anything to do with the question of the broader question of 5904. It was that very narrow question of- So the fact that the court of veterans claims referenced the fact that there was one ambiguity and two in the 5904 issue, that somehow violates the totality of circumstances? Because that was not a circumstance that existed, Your Honor. What is supposed to be examined by the reviewing court to determine whether or not the government has satisfied its burden under Egypt to show substantial justification is what was the reason that the board took the action to exercise jurisdiction. Are you saying, therefore, that you can't, when you're evaluating whether or not a government acted with substantial justification, you cannot consider what the state of the law was at that time on that particular question? Of course you cannot, but it has to go to some objective documentation of that fact. And all that existed in the record was the plain language of the statute. There had been no general counsel's opinion interpreting 5904 to say that the board did have jurisdiction. There was no regulation promulgated by the VA that said that the board had jurisdiction. There was no court decision that said that the board had jurisdiction. The VA and the board just decided they had jurisdiction. And they wrongfully decided that. And they can't come forward and say, now that we know we were wrong, we were wrong because this was so complex. They weren't wrong because it was so complex. They were wrong because they exceeded the plain language of the statute, which granted a limited authority for initial review. Yeah, but we're not talking here. And actually, I think in your briefing, we're talking about whether or not the question is whether or not the government was substantially justified, not whether the board or the court of residence claims were substantially justified. So the question is whether or not, given the state of the law at the time, now you may say, well, it was clear to me that the board decision and the court of residence claims decisions up until that time were absolutely wrong. But if you're the government and you're relying on those decisions, then why isn't that substantial justification? Because that's a myth, Your Honor. There are no decisions. There were no decisions that said that the board had jurisdiction. If there had been, that would have been a basis for substantial justification. And I beg to differ that it's not the board's position that's at issue. That was when the VA took its administrative position that the board had jurisdiction to review. And when the board, in concert with the VA, took the exercise of that jurisdiction, they did so without any justification whatsoever. But under the aegis statute, we're determining whether or not the action was prom of substantial justification. Are we not evaluating the substantial justification of the government, the veterans' prescription, in other words, the party you're litigating, not of the board? Absolutely, Your Honor. And you're reviewing it in the context of what was the totality of circumstances in this case in October of 1999. What existed in the record in 1999 that gave the board some reason to believe that it had jurisdiction under 5904? Mr. Farber, you're not suggesting, are you, that if the government has to take a position on an issue that hasn't been adjudicated, that hasn't been subject of an opinion or anything of that sort, that whatever the position it takes can never be argued as substantially justified? No, of course not. But they have to come forward with something that existed at the time that they took that position. Well, what's wrong with the government saying our position at the time was substantially justified? And here are some reasons, as elucidated and referenced in the later decision of Skates. Because, Your Honor, that's post hoc rationalization. That's not the totality of circumstances that existed in October of 1999. But if it's a reaffirmation or a confirmation of the government's position, what's wrong then? Because it's a de facto explanation. It's an after the fact explanation of we did this because we now know from Skates we couldn't do this. But that's the only explanation. Without Skates, I suppose the government would come in and say we did this because, and the government would lay out its reasoning. And all they did here was lay out the reasoning and say, as shown in Skates. And that's what they did in the litigation in Skates. And they offered their reasons why 5904 should be interpreted broadly, as opposed to the plain language, which is more narrow. The court rejected that. What I'm suggesting, Your Honor, is that the Board of Veterans' Appeals, in particular, has the authority to request a presidential opinion from their general counsel. If they had requested a presidential opinion, that presidential opinion would have been the basis for substantial justification. Well, this gets back to the question I asked in the beginning. You seem to answer that the government's not required to have either an opinion or a prior decision or something of that sort, that it can't take a position on an issue that hasn't been either adjudicated or the subject of an opinion and make the argument that the position was substantially justified. Well, then, mayhaps I overstated my response to you. In the context of the exercise of appellate jurisdiction, which is what the Board did here, they exercised jurisdiction that could only have been provided by Congress. So to that extent, I would have to then respond in the negative in the specific context that we're addressing here. In the more general context, though, can the government come forward and offer up an explanation for why it acted the way in which it did? Most certainly. But in this case, we're talking about the unlawful exercise of jurisdiction to undertake actions that were not authorized by Congress. And Mr. Potter suffered as a consequence of that, had to take an appeal, had to hire an attorney, had to wait for the state's decision, and then when he got the state's decision, the state's decision sustained the position that he and other attorneys had taken, that you were simply making this up, VA and the Board, as you went along. And you cannot justify that, substantially or otherwise, by simply coming in and offering a post hoc explanation of your actions based upon the fact that you lost the case in this case. I see that I'm in my rebuttal time, Your Honor, so I'm going to switch over to questions. Good afternoon, Your Honors. The gravamen of Mr. Potter's appeal is that the CABC looked, considered, quote, circumstances, quote, that were not in the record as of October 20, 1999. The first thing is, what type of circumstance, the consideration of which would be outside the record, and does the law require more than considered? The government submits that, first of all, whatever that circumstance is, the government has to, or the CABC has to rely upon it. With respect to the Skates decision, if you look at the four pages of the opinion, which is in dispute, the March 3, 2006 opinion, all the CABC does in that opinion is first put things into historical context, discuss what Skates said with respect to the state of the law, and then went through its own analysis of the factors that must be considered in making a substantial justification determination. Nowhere in the Skates opinion is there any indication whatsoever that the court relied upon the Skates decision. The government agrees with Mr. Potter that a subsequent decision should not be a factor. Well, what was the point of reference in the Skates? Was it the Skates? Oh, absolutely, Your Honor, but they relied on the government's justification, which was put forward in this case in a January 29, 2001 submission. It's also very important, I think, to understand the factual context. As of October 20, 1999, the record in this case consisted basically of two things, the letter that Mr. Potter wrote to the board. It's important to note that in that letter to the board, he never questioned the jurisdiction of the board. The letter simply stated, this fee agreement comports with the regulatory requirements. So when the board issued its October 20, 1999 decision, it of course did not discuss whether or not it had jurisdiction. If that issue had been presented to him, there would have been a discussion of what the state of the law was, what the policy of the VA was, what the practice of the VA was. In an ordinary case, of course, an issue is presented, it's an adversarial proceeding, and there is a record giving both sides of the story, and then there's a decision. But how this arose, that didn't happen. So it wasn't until January of 2001, after the voluntary remand and the EJIT application was filed, did the question first come up. And in that first submission of the agency, which was January 29, 2001, they laid out why they felt there was substantial justification in believing that the board had jurisdiction. So the same factors that the Skates decision discusses. It's also interesting to note that the agency in that pleading said that the fact of the Skates decision was sufficient to make the initial position substantially justified. That is an incorrect statement of the law, and the Skates court did not adopt that at all. So this goes to both. The two circumstances are- You said the Skates court did not adopt that at all? You're talking about this court in Potter? No, the CAVC court in the March 3, 2006 decision. In this case? Yes, I'm sorry. Yeah, okay, you had said, I think- I'm sorry. You said the court CAVC in the Skates case. No, I'm very sorry, I wanted to note that the CAVC in this case did not adopt that position that was articulated by the agency in that 2001 submission. So the two circumstances are basically the Skates decision, which clearly was not relied upon by the CAVC. And the other circumstance is this post hoc rationalization of the agency. Well, yes, it was post hoc, meaning post October 20, 1999, because it's absurd to think that there would be a record when something hasn't been contested. The first opportunity where it did become an issue, they did brief it, and that's that January 29 submission. Moreover, the post hoc rationalization is simply discussing what the state of the law was in October of 1999. I believe there was three board CAVC decisions which left that question open, and then there was one Federal Circuit decision, the Cox decision, which indicated that the board did not have jurisdiction. But there was certainly nothing binding at the time, and the clear language of the statute at issue clearly made it reasonable. I mean, the statute said the board may review fee applications, which I think would certainly construe this, could look at the four corners of the application and determine whether it meets the regulatory requirements, and, if appropriate, reduce the fee. And as the court in this case indicated, it's not a great line test. For example, the board could have said, because this fee agreement requests more than the 20 percent limit, it is per se unreasonable. And if they had worded it that way, I think there would be no question that that was within their jurisdiction. So, for all of these reasons, the government urges that the court perform the decision below. MR. GARRETT. You know, I'd like to start with the discussion again about the VA's position about the content of the record in 1999. Well, the content of the record in 1999 is what existed in 1999 to lead the board to believe it had jurisdiction. Obviously, the board, or excuse me, the VA has declared in its brief that it was their policy to have the agency send these fee agreements up to the board. There wasn't a regulation that told them to do that. It was their policy. But their policy wasn't articulated anywhere. No one was on notice of that policy by APA, notice and comment. There was no regulation promulgated that said that the board would have authority. There was no VA General Counsel's opinion that said that they had reviewed this statute, 5904, and said that the board did have jurisdiction under 5904 to review fee agreements in the first instance. But aren't they arguing that, well, it was not only a policy, but it was an interpretation of a statute that it intended was broad enough to warrant participation in jurisdiction? MR. GARRETT. It was an interpretation that did not exist in 1999 except by the action of the board to take jurisdiction. Now, the  GARRETT. Why isn't that enough? If the board says, well, we had a policy, and the policy is based on a statute, and that's why we did what we did, and we were substantially justified. MR. GARRETT. Because, Your Honor, that position was not substantially justified. There was nothing to justify that position except their implicit, nonpublished conclusion that there was jurisdiction. Substantial justification, as the courts have defined it, rely upon the totality of the circumstances. There were no circumstances which put Mr. Potter or any other attorney on notice of why the board believed it had jurisdiction to do what it did. It wrote regulations to review fee agreements for reasonableness and incessantness. But apparently Mr. Potter didn't object to it at the time.  GARRETT. No, and he does not have an obligation to make that objection. Jurisdiction can be raised at any time, and then the question becomes whether they properly exercised jurisdiction. And they ultimately conceded post-Skates that, no, they didn't have a basis for jurisdiction, and therefore it had to go back to be considered by the VA in the first instance. It really is a question of jurisdiction, isn't it? I'm sorry? I mean, this was before the war, before the arm of the top party VA. It's a jurisdictional matter. This is what Congress intended within the board, within the VA's. Well, I'm not sure I would be able to agree with that. I think that it is a question of jurisdiction because it turns on the question of, as was authority to the board to exercise jurisdictions to review fee agreements in the first instance. And what 5904 said, as interpreted in Skates, was, is the board had jurisdiction to do that for the very narrow purpose of unreasonableness and incessantness. But it did not have a grant of authority to exercise jurisdiction to make a decision without a prior VA decision on the question of the eligibility or entitlement to charge a fee. I'm sorry, Judge Gross was here? No. I see that I'm just about out of my time. This is it for the questions. I want to proceed any further. Thank you very much. Thank you. Thank you.